UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| TODD BARBER, | | Civ. No. 17-5012 |
| Plaintiff, | | |
| vs. | | **COMPLAINT** |
| ACUITY MUTUAL INSURANCE COMPANY, | | |
| Defendant. | | |



FILED
FEB 14 2017
CLERK

Plaintiff Todd Barber, by and through his undersigned attorney, for his cause of action against Defendant Acuity Mutual Insurance Company, states and alleges as follows:

## PARTIES

1.     Plaintiff Todd Barber is currently a citizen of the State of South Dakota and resides in the County of Pennington.

2.     Defendant is incorporated or has its principal places of business in a state other than South Dakota.

## JURISDICTION

3.     The amount in controversy exceeds $75,000.

4.     Jurisdiction herein is based on 28 U.S.C. § 1332, Diversity of Citizenship.

## FACTS

5.     Plaintiff Todd Barber (Mr. Barber) was an employee of MWP Construction, Inc., on or about July 6, 2009, when he suffered a work-related injury.

6.     At all times relevant to this action, Defendant Acuity Mutual Insurance Company ("Acuity") had in place a policy of insurance that, by its terms, required Acuity to pay workers' compensation benefits to employees of MWP Construction, Inc., who were injured within the course and scope of their employment.

7.      Acuity delegated its claims administration duties to Sue Zeevold and Jennifer Duescher, employees or agents of Acuity, who conducted claims administration on behalf of Acuity with regard to its insurance policy issued to MWP Construction, Inc., for the benefit of Mr. Barber and other employees.

8.      Sue Zeevold and Jennifer Duescher performed Acuity's claim administration duties, including the duties of good faith and fair dealing, the duties of processing paperwork related to claims, investigating claims, obtaining medical reports, monitoring treatment, verifying coverage, adjusting, settling, and defending claims, and issuing payment for benefits.

9.      On July 6, 2009, while in the course and scope of his employment, Mr. Barber suffered a low back injury.

10.     Mr. Barber sought medical care and incurred medical expenses as a result of the work-related injury.

11.     Sue Zeevold and Jennifer Duescher from Acuity were responsible for handling Mr. Barber's resulting worker's compensation claim under MWP Construction Inc.'s insurance coverage with Acuity.

12.     On June 8, 2010, Acuity had Mr. Barber see Dr. Wayne Anderson for an IME. Dr. Anderson agreed that the July 6, 2009, injury was a major contributing cause of his current diagnostics, which was right lower extremity pain, probably L4 radicular symptoms.

13.     On July 7, 2010, Dr. Anderson gave a supplemental report after he had reviewed Mr. Barber's prior chiropractic records and reaffirmed his opinions.

14.     Acuity then requested another IME—this time with Dr. Nolan Segal.

15.     On February 22, 2011, Dr. Segal issued a report stating extensive pre-existing degenerative disease and did not sustain any new structural injuries to his spine as a result of the July 2009 work incident and that the July 2009 work incident was not a substantial contributing cause of his degenerative spinal condition.

16.     Since May 2011, Mr. Barber had been treating with Dr. Robert Ingraham at Black Hills Neurosurgery and Spine.

17.     On July 18, 2011, Dr. Ingraham recommended a lumbar fusion and decompression at L4-5 with instrumentation and transforaminal lumbar interbody fusion, and Mr. Barber agreed to proceed.

2

18.     On July 20, 2011, Black Hills Neurosurgery and Spine sent a request for authorization to Acuity but the surgery was not approved.

19.     Eventually the parties entered into a Compromise Settlement Agreement and Release regarding Mr. Barber's worker's compensation benefits, which was approved by Administrative Law Judge Runyan on December 15, 2011.

20.     The Settlement Agreement stated:

> The parties agree that claimant's right to future reasonable and necessary medical expenses directly and causally related to the alleged work-related back injury on July 6, 2009, by this agreement, are acceptable as compensable pursuant to SDCL 62-4-1 and that all outstanding medical expenses causally related to claimant's back injury have been or will be paid by employer/insurer. This agreement shall not result in the waiver of any future medical benefits for the back injury, and claimant shall remain entitled to medical benefits in accordance with the statutes in effect at the date of the injury and as determined by the Managed Care rules of the state of South Dakota and the applicable statutes.

21.     Eventually Mr. Barber's back pain progressed to a point where his doctors determined that surgery was his only option.

22.     As a result, on July 30, 2013, Black Hills Neurosurgery and Spine sent another request to Acuity seeking approval of the same surgery.  Acuity ignored the request.

23.     On March 7, 2014, Dr. Christopher Dietrich noted that the lumbar fusion recommended by Dr. Ingraham had still not been authorized and that Mr. Barber was waiting for the lumbar fusion due to significant instability.

24.     On March 27, 2014, the Rehab Doctors faxed to Acuity Dr. Dietrich's March 7 letter asking for authorization for treatment.  Acuity ignored that request too.

25.     As a result of Acuity's wrongful denial, Mr. Barber was unable to get necessary medical care and treatment.

26.     On June 11, 2014, Mr. Barber filed a Petition for Hearing with the South Dakota Department of Labor seeking to compel Acuity to pay for medical treatment for Mr. Barber's low back.

27.    Acuity answered the Petition for Hearing and denied it was responsible for Mr. Barber's injuries.

28.    On August 28, 2014, counsel for Mr. Barber sent a letter to Rebecca Mann, counsel for Acuity, regarding Acuity's refusal to authorize the surgery recommended by Mr. Barber's treating doctors.

29.    In response, Acuity requested Mr. Barber undergo a third IME, this time with Dr. Wade Jensen.

30.    On December 12, 2014, Dr. Jensen issued a medical review letter. He stated that he thought Mr. Barber needed a two-level fusion instead of a one-level fusion advocated by Dr. Ingraham. He also stated that the work injury was not a major contributing cause of the need for surgery with no further explanation.

31.    Based on Dr. Jensen's medical review letter, Acuity denied the surgery stating:

> The Employer/Insurer accepted the work injury, but not the underlying degenerative condition. Acuity is not changing its position on that by denying the surgery. Instead, it is maintaining its position of denying the underlying degenerative condition and is not accepting the surgery that is not directly causally related to the work injury, pursuant to the terms of the settlement agreement.

32.    On January 12, 2015, Mr. Barber filed a Motion for Order That Employer and Acuity May Not Terminate Benefits Except Pursuant to SDCL § 62-7-33.

33.    On April 16, 2015, the Department of Labor issued a Decision in Barber's case explaining that the law in South Dakota requires an insurer, like Acuity, to prove a change in condition pursuant to SDCL § 62-7-33 in order to terminate medical benefits.

34.    On July 16 and 17, 2016, Dr. Ingraham performed surgeries on Barber's low back to repair the areas of his spine that were causing him continuing pain.

## COUNT I
## BAD FAITH & UNFAIR AND DECEPTIVE PRACTICES

35.    Plaintiff hereby reincorporates by reference the foregoing paragraphs.

4

36.    At all material times, Defendant committed the wrongful acts herein alleged through agents or employees who were acting within the purposes and scope of its authority and employment.

37.    With actual notice of Plaintiff's compensable injuries, Defendant acted knowingly and without reasonable basis in refusing to make a reasonable, prompt, and adequate investigation of Plaintiff's claim for compensation.  This was done for the purposes of discouraging, avoiding, or reducing the compensation due to Plaintiff.

38.    Defendant, without any reasonable basis and for the purpose of discouraging, avoiding, or reducing the compensation due to Plaintiff, intentionally and wrongfully denied Plaintiff's workers' compensation claim in violation of South Dakota law and the Settlement Agreement agreed to by the parties and adopted by the Department of Labor.

39.    Defendant either knew or should have known of the lack of reasonable basis for denial of benefits.

40.    Defendant denied workers' compensation benefits in this case in violation of the covenant of good faith and fair dealing and acted in bad faith.

41.    Defendant also failed to give equal consideration to the interests of Plaintiff, have ignored facts that support his claim, and have ignored law that requires payment of the claim.

42.    Acuity's denial of benefits was in violation of South Dakota law because the issues agreed to by the parties in the Compromise Settlement Agreement, as adopted by the Department of Labor, constitute *res judicata.* *See Whitney v. AGSCO Dakota*, 453 N.W.2d 847 (S.D. 1990); *Larsen v. Sioux Falls School Dist. 49-5*, 509 N.W.2d 703 (S.D. 1993).

43.    On September 2012, the Department of Labor issued a Letter Decision & Order in a case where Acuity was also the insurer and ruled that Acuity could not terminate medical benefits and "unilaterally ignore the Department's decision." *Whitesell v. Rapid Soft Water Spas, Inc. and Acuity and Zurich North America*, HF No. 112, 2009/10 (Sept. 20, 2012).

44.    Defendant's actions constituting bad faith included, but were not limited to, the following:

a. Defendant breached its duty to adjust Plaintiff's claim in good faith and to investigate every available source of information, set out to collect the minimum facts necessary to support a denial of the claim;

5

b. Defendant took actions which injured the Plaintiff's rights;

c. Defendant failed to fulfill its continuing duty to investigate and evaluate the claim;

d. Defendant terminated Plaintiff's worker's compensation benefits without any reasonable basis for doing so; and

e. Defendant failed to honor its agreements as set forth in the settlement agreement.

45.    As a legal result of this conduct, Plaintiff has experienced financial loss and hardship, severe emotional and physical distress, and shame and embarrassment.

46.    Plaintiff is entitled to damages as a result of the breach of the implied duty of good faith and fair dealing.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47.    Plaintiff hereby realleges all previous paragraphs as if set forth herein.

48.    Defendant knew, or in the exercise of reasonable care should have known, that its behavior and actions in the denial of benefits, and subsequent handling of this claim would result in serious emotional distress to the Plaintiff due to his medical and financial position.

49.    In doing the acts alleged in this Complaint, Defendant acted with reckless, intentional, and deliberate disregard for the likelihood that Plaintiff would suffer severe emotional distress as a direct and proximate result of its actions.

50.    As a legal result of this conduct, Plaintiff has experienced financial loss and hardship, severe emotional and physical distress, and shame and embarrassment.

51.    Plaintiff is entitled to damages as a result of the intentional infliction of emotional distress.

## COUNT III
## ATTORNEY'S FEES

52.    Plaintiff reincorporates by reference the foregoing paragraphs.

6

53.     The denial of full payment of benefits owed pursuant to Plaintiff's underinsured motorist claim was made vexatiously and without reasonable cause, entitling Plaintiff to an award of attorney's fees incurred in an effort to secure Defendants' compliance with the terms of the policy coverage, pursuant to SDCL 58-12-3.

54.     The acts herein complained of further constitute unfair trade practices in the business of insurance under South Dakota law entitling Plaintiff to an award of attorney's fees pursuant to SDCL 58-33-46.1.

55.     Defendant's refusal to timely pay the full amount of benefits was vexatious or without reasonable cause, and pursuant to SDCL § 58-12-3, Plaintiff is entitled to his attorney's fees and costs.

## COUNT IV
## PUNITIVE DAMAGES

56.     Plaintiff hereby realleges all previous paragraphs as if set forth herein.

57.     Defendant have acted with oppression, fraud, express and implied malice and a reckless disregard for the rights of Plaintiff by refusing and delaying in providing worker's compensation benefits owed to Plaintiff, and intentionally inflicting emotional distress upon Plaintiff.

58.     Upon information and belief, Defendant have engaged in a pattern and practice of acting in bad faith by settling worker's compensation claims purporting to agree to pay future medical treatment but really intending to deny treatment once claimants are no longer represented by counsel.

59.     Punitive damages are appropriate in this case pursuant to SDCL § 21-3-2 in order to punish and deter Defendant from continuing in this course of conduct.

WHEREFORE, the Plaintiff prays for judgment as follows:

1.     All damages (compensatory, general, special, and consequential) in an amount to be determined at trial;
2.     Punitive damages in an amount to be justly determined by the jury;
3.     Attorneys' fees, costs, disbursements herein, and interest; and
4.     Such other and further relief as the Court deems just and proper.

7

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Federal Rule of Civil Procedure 38, Plaintiff Todd Barber hereby demands a trial by jury of any issue triable of right by jury.

Dated this _14th_ day of February, 2017.

BEARDSLEY, JENSEN & LEE, Prof. L.L.C.

By:_____
Brad J. Lee
blee@blackhillslaw.com
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD  57709
Telephone:  (605) 721-2800
Facsimile:  (605) 721-2801
Attorneys for Plaintiff Todd Barber